# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00100-COA

**MARCHENNE NYREE HATCHETT A/K/A**        **APPELLANT**
**MARCHENNE HATCHETT**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/12/2023 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JULIANNE KAY BAILEY |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/01/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McCARTY AND ST. PÉ, JJ.**

**ST. PÉ, J., FOR THE COURT:**

¶1.   Marchenne Nyree Hatchett was indicted in Madison County on one count of sexual battery under Mississippi Code Annotated section 97-3-95(2) for "engag[ing] in sexual penetration with [Amy[1]], a female child under the age of eighteen (18) years of age, . . . while [Hatchett] was in a position of trust or authority over [Amy], to-wit: her teacher." Following a trial, he was convicted as charged and sentenced to thirty years in the custody of the Mississippi Department of Corrections, with fifteen years suspended, fifteen years to

---

[1] The Court adopts the alias used by the parties to protect the victim's identity.

serve, and five years of supervised probation. The court also ordered Hatchett to register as a sex offender.

¶2. Hatchett appeals his conviction, arguing only that the conviction was against the overwhelming weight of the evidence. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. Amy was a fourteen-year-old student at Olde Towne Middle School in Ridgeland on February 23, 2023. Hatchett, whose birthdate was in January 1977, was her P.E. teacher. On February 23, Amy's first class was Hatchett's. Amy testified that it was usually "pretty boring" and that most students played on their phones and sat around. That day, Amy was feeling "upset." Amy and one of her friends, Kendall, were fighting because Kendall had been "saying some mean things" about her. Amy, who had eaten five marijuana edibles before school, sat at a desk near Hatchett's and began confiding in him about her troubles. It was not her usual desk, but she was looking for a friend.

¶4. Amy told Hatchett that Kendall was spreading rumors that she had slept with "a bunch of people," which Amy denied. No one else could hear them talking. Most students were on their computers or phones. Hatchett told Amy that she should not be friends with Kendall, but he also pushed the conversation in an inappropriate direction: Hatchett asked Amy how many people she *had* slept with. The conversation progressed, and Hatchett eventually asked Amy if she liked him and would sneak off to a restroom with him.

¶5. Amy and Hatchett left the classroom and headed toward what witnesses called the sixth-grade hall. They passed the student restrooms and went through an outdoor breezeway

2

toward the sixth-grade hall. But when they got to the doors, they saw a janitor, so they turned around and went back to the teachers' lounge, which they had passed earlier. Amy had never been in there before. She described the room at trial and had drawn a sketch of the room's layout when questioned by the school.

¶6. Amy testified that Hatchett took her into one of two restrooms in the teachers' lounge. When they got inside, Hatchett pulled down his pants. He stood near the door, which he had locked after entering. Amy was on her knees near the toilet. Amy testified that Hatchett made her perform fellatio. Amy testified it lasted two to two-and-a-half minutes and that Hatchett did not speak or do anything else during the act. Hatchett stopped Amy and said they should head back to class. They sneaked out of the bathroom and returned to the classroom.

¶7. She called her mother after the assault but did not tell her about it. Amy continued going to classes and did not tell any of her teachers what had happened. Two days after the assault, she told her friend Kendall.

¶8. Amy admitted that the marijuana edibles she took before class made her memory a little fuzzy. But she had no question that Hatchett had assaulted her in the teachers' lounge restroom that day.

¶9. The assault happened on a Thursday, and Amy was scheduled to take a drug test the following Monday. Despite this, she ate the marijuana edibles before class that morning. She failed her drug test and was sent to a rehab clinic for seven days. While at the clinic, Amy was able to call home for ten minutes one evening, and she disclosed the assault to her mother. Amy denied that she made up the assault because she had gotten in trouble for using

3

marijuana. She testified that after she sobered up at the clinic, she realized that what Hatchett had done "was wrong."

¶10. After Amy's mother learned of the assault, she notified the school. Principal Levi Robinson testified that once he learned of Amy's allegation, he spoke with Hatchett, who provided a statement admitting that he had gone into the teachers' lounge with Amy. Hatchett also claimed that he asked another teacher to cover his classroom while he and Amy left, but Robinson was not able to find any evidence to support that claim.

¶11. Robinson also pulled security footage. He saw Hatchett and Amy leaving Hatchett's classroom as she alleged. The video was played for the jury, and Robinson explained the layout of the buildings that could be seen on camera. Robinson confirmed that the teachers' lounge could not be seen on camera.

¶12. There were two video angles: one on an interior hallway and atrium and one on an exterior breezeway. At 9:46:08 a.m., Hatchett and Amy exited a room into an interior hallway. Robinson testified that they appeared to be leaving Hatchett's classroom. They walked down the hall toward the student restrooms, and Hatchett directed Amy to their right, walking past the girls' restroom onto a side hall. Robinson testified that the teachers' lounge was on the hall they turned toward. By 9:46:47 a.m., they were no longer on camera. At 9:47:07 a.m., Hatchett and Amy were seen on the exterior camera walking through a breezeway toward another building. They reached the other building at 9:47:25 a.m., opened the door, and Amy entered briefly before they turned around and returned in the direction they had come. By 9:47:43 a.m., they could no longer be seen on the exterior camera.

¶13. At 9:47:53 a.m., the interior camera filmed Hatchett walking from the direction of the teachers' lounge. Amy was not with him. He walked to the atrium, where the hallways converge, and looked down the other hallways before turning back toward the teachers' lounge hallway. By 9:48:05 a.m., he was no longer visible on camera. At 9:49:50 a.m., Amy and Hatchett were back on camera, returning from the direction of the teachers' lounge. They continued toward the classroom they first exited, and students began filling the hallways.

¶14. Amy gave a statement to the Ridgeland Police Department and to the Child Advocacy Center (CAC). Defense counsel refreshed her memory with her CAC interview in which she had said that Hatchett "kept saying how he just needed to release" while she was performing fellatio. She admitted that this contradicted her earlier testimony that Hatchett did not speak and clarified that her earlier testimony had been wrong. Amy also testified that she told the CAC interviewer that she had told Hatchett she did not want to do what he was asking. She admitted that she did not stop the janitor she saw and tell him that Hatchett was trying to force her to do things against her will.

¶15. After Amy's cross-examination, she admitted to some discrepancies in her statements about whom she told and when, but she testified she clearly remembered that Hatchett had assaulted her by putting his penis in her mouth.

¶16. The defense presented no witnesses. The jury found Hatchett guilty as charged. Hatchett filed a post-trial motion seeking judgment notwithstanding the verdict or a new trial, which the court denied.

## ANALYSIS

¶17. Hatchett presents one issue on appeal: whether the trial court erred in denying his motion for a new trial, which argues that his verdict was against the overwhelming weight of the evidence.[2] We review the trial court's denial of a motion for a new trial for an abuse of discretion. *Campbell v. State*, 380 So. 3d 985, 987 (¶6) (Miss. Ct. App. 2024). In doing so, we must weigh the evidence in the light most favorable to the verdict and disturb the jury's verdict only when "it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017). We also must keep in mind that "when evidence or testimony conflicts, the jury is the sole judge of the weight and worth of evidence and witness credibility." *Goode v. State*, 374 So. 3d 592, 606-07 (¶¶35-37) (Miss. Ct. App. 2023).

¶18. Hatchett argues that the trial court abused its discretion by denying his motion for a new trial because Amy's testimony was "substantially impeached" by the lack of corroborating evidence and her delayed disclosure. However, Amy's testimony—while timid at times—was never impeached in any significant respect.

¶19. After refreshing her memory with her statement to the CAC, Amy admitted that she was incorrect in her earlier testimony that Hatchett had not said anything during the assault. She also showed some confusion about the person to whom she had disclosed the assault and

---

[2] The State argues that Hatchett's argument concerning his motion for a new trial is procedurally barred and/or waived because he did not elaborate on his claim that the verdict was against the overwhelming weight of the evidence. We decline to say that Hatchett's argument is procedurally barred or waived. After the State completed its case-in-chief, Hatchett moved for a directed verdict and noted that there were credibility issues with Amy's testimony. Though his post-trial motion did not expound on this statement, it is clear that Hatchett believed Amy's testimony to be incredible.

6

when. But this does nothing to substantially impeach the crux of her testimony: that she and Hatchett left his classroom and went to the teachers' lounge, where she performed fellatio on him for approximately two minutes. Additionally, the surveillance video corroborated her testimony that she and Hatchett left his class, walked through the school, tried to enter another area of the school, and then turned around. Neither Hatchett nor Amy are seen on camera for a little under two minutes—the same amount of time she testified she had performed fellatio. Robinson confirmed that the teachers' lounge could not been seen on camera, and the video showed Hatchett and Amy coming from that direction after their two-minute absence. Finally, Hatchett admitted to the school that he had taken Amy into the teachers' lounge that day.

¶20. Hatchett also argues that Amy's testimony should not have been believed because she had a motive to lie to explain her drug use. But this is precisely the sort of credibility call that is left to the jury, not this Court. Hatchett's counsel also highlighted Amy's delayed disclosure and the fact that she did not disclose the abuse until after she was already in trouble for using drugs. The jury heard the alleged motive for fabrication and still found Hatchett guilty of sexual battery. This finding was not against the overwhelming weight of the evidence, and we do not sanction an unconscionable injustice by affirming the conviction.

### CONCLUSION

¶21. The trial court did not abuse its discretion by denying Hatchett's motion for a new trial, as the conviction was not against the overwhelming weight of the evidence. Hatchett's conviction and sentence are **AFFIRMED**.

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND WEDDLE, JJ., CONCUR. EMFINGER, J., NOT PARTICIPATING.**